UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
DAVID EARL JONES,                       )
                                        )
            Petitioner,                 )
      v.                                 )        Civil Action No. 10-1086 (PLF)
                                        )
RONNIE HOLT,                            )
                                        )
            Respondent.                 )
_____)

OPINION

        David Earl Jones, a prisoner who was convicted of first degree murder and other

crimes in the Superior Court of the District of Columbia, has filed a *pro se* petition for a writ of

habeas corpus challenging his imprisonment under 28 U.S.C. § 2254.  Mr. Jones also moved for

an evidentiary hearing, a request that the Court denied upon concluding that he was barred from

obtaining a such a hearing by 28 U.S.C. § 2254(e)(2).  See Memorandum Opinion, Jones v. Holt

(Sept. 30, 2011) [Dkt. No. 9].  Presently before the Court is a motion by Mr. Jones to reconsider

the denial of his request for an evidentiary hearing, as well as a motion by the respondent to

dismiss Mr. Jones' habeas petition.  For the reasons stated below, the Court will deny Mr. Jones'

motion to reconsider and grant the respondent's motion to dismiss.[1]

_____

        [1]        The papers filed in connection with this matter include: petitioner's petition for a
writ of habeas corpus ("Pet.") [Dkt. No. 1]; respondent's motion to dismiss the petition ("Mot.")
[Dkt. No. 4]; respondent's memorandum in support of his motion to dismiss and in opposition to
the petition ("Mem.") [Dkt. No. 4-2]; petitioner's response ("Resp.") [Dkt. No. 5]; petitioner's
motion for an evidentiary hearing ("Mot. Ev.") [Dkt. No. 6]; petitioner's motion for
reconsideration ("Mot. Recons.") [Dkt. No. 11]; and petitioner's supplement to his motion for
reconsideration ("Supp.") [Dkt. No. 12].

I. BACKGROUND

Mr. Jones was convicted in the Superior Court of the District of Columbia in 2001

of first degree murder while armed (D.C. Code §§ 22-2101, 22-4502), second degree murder

while armed (D.C. Code § 22-2103), two counts of possession of a firearm during a crime of

violence (D.C. Code § 22-4504(b)), and related weapons offenses.  See Mem. Att. F at 1; Mem.

Att. G at 1.  His conviction and sentence were upheld on direct appeal by the District of

Columbia Court of Appeals in June 2007.  See Mem. Att. F.  While his direct appeal was

pending, Mr. Jones initiated collateral proceedings under D.C. Code § 23-110 to vacate and set

aside the judgment due to ineffective assistance of trial counsel.  Mem. Att. A at 3.[2]  The

Superior Court denied Mr. Jones' Section 23-110 motion in September 2008, see Mem. Att. C,

and this denial was affirmed by the D.C. Court of Appeals in November 2009.  See Mem. Att. G.

In April 2010, Mr. Jones filed a motion in the D.C. Court of Appeals to recall the

mandate in his direct appeal, alleging ineffective assistance of appellate counsel.  See Mem.

Att. H.  The court of appeals denied the motion in a one-sentence per curiam order without

requesting a response from the government.  See Mem. Att. I at 8; Order, Jones v. United States,

No. 01-CF-1186 (D.C. May 26, 2010).

Shortly after the denial of his motion to recall the mandate, Mr. Jones filed a

petition for a writ of habeas corpus in this Court, advancing the same claims of ineffective

assistance of appellate counsel that he pursued in his motion to recall the mandate.  See Pet.

According to Mr. Jones, his counsel on direct appeal rendered ineffective assistance by not

---

[2]      D.C. Code § 23-110 establishes a remedy analogous to 28 U.S.C. § 2255 through
which prisoners sentenced in D.C. Superior Court may challenge their convictions or sentences.
See Blair-Bey v. Quick, 151 F.3d 1036, 1042 (D.C. Cir. 1998).

2

developing and presenting claims that Mr. Jones' trial counsel was ineffective for failing to argue (1) for an intoxication defense, and (2) that only one charge of possession of a firearm during a crime of violence could arise from the two murders of which Mr. Jones was convicted.  Id. at 5A-5B.

## II.  DISCUSSION

### A. Evidentiary Hearing

Mr. Jones has moved the Court to reconsider its decision denying his motion for an evidentiary hearing.  See Mot. Recons.  Mr. Jones previously argued that an evidentiary hearing was necessary to investigate one of his two claims: that his appellate counsel was ineffective for failing to raise on direct appeal the purported ineffectiveness of his trial counsel's failure to pursue an intoxication defense.  See Mot. Evid. at 2.

### 1.  The Court's Earlier Decision

The Court denied Mr. Jones' motion upon concluding that 28 U.S.C. § 2254(e)(2) barred the Court from conducting such a hearing.  That section provides that if a habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim," unless one of two criteria is met.  28 U.S.C. § 2254(e)(2)(A).[3]  The Court concluded that Mr. Jones had failed to develop the factual basis of

---

[3]     The claim must rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," or on "a factual predicate that could not have been previously discovered through the exercise of due diligence."  28 U.S.C. §§ 2254(e)(2)(A).  The statute further requires that, even where one of these two criteria are met, "the facts underlying the claim [must] be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would

his claim in the District of Columbia courts and that this Court therefore was prohibited by Section 2254(e)(2) from conducting an evidentiary hearing on the matter.

The Court reasoned as follows:  Mr. Jones had the opportunity to pursue his ineffectiveness of appellate counsel claim by filing a motion to recall the court of appeals' mandate.  See Reyes v. Rios, 432 F. Supp. 2d 1, 3 (D.D.C. 2006) ("In the District of Columbia, challenges to the effectiveness of appellate counsel are properly raised through a motion to recall the Court of Appeals' mandate.") (citing Watson v. United States, 536 A.2d 1056, 1060 (D.C. 1987)); Hardy v. United States, 988 A.2d 950, 961 (D.C. 2010) (stating that claims of ineffective assistance of appellate counsel "must be litigated as an independent claim, which requires a recall of the mandate of the direct appeal").  "Any motion to recall the mandate," however, "must be filed within 180 days from the issuance of the mandate."  D.C. App. R. 41(f).  Although Mr. Jones *attempted* to develop the factual basis of his claim in the District of Columbia courts by filing a motion to recall the mandate advancing that claim, he did not do so until nearly three years after the mandate issued.  See Mem. Att. H at 2; Mem. Att. I at 8.  The court of appeals summarily denied his motion five weeks after it was filed in a one-sentence per curiam order. See Mem. Att. I at 8.[4]

In view of these facts, this Court wrote, "Mr. Jones' motion was apparently denied because it was procedurally time-barred."  Memorandum Opinion, Jones v. Holt (Sept. 30, 2011), at 3.  Through this apparent procedural default, Mr. Jones forfeited his opportunity to develop a

---

have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).

[4]     The order states in full: "On consideration of appellant's motion to recall the mandate, it is ORDERED that the motion is denied."  Order, Jones v. United States, No. 01-CF-1186 (D.C. May 26, 2010).

factual record in the District of Columbia courts on his claim.  "Had he timely raised the issue before the District of Columbia Court of Appeals and had that court found it unable to resolve the issue without a factual record, it presumably would have remanded the case to the Superior Court to develop one."  Id. at 5; see Watson v. United States, 536 A.2d at 1061 ("[I]n some cases, the record may be remanded to the trial court under appropriate instructions and time constraints for a hearing and factual findings, with this court retaining jurisdiction pending the trial court's findings and a return of the record.").  A habeas petitioner has "failed" to develop the factual basis of a claim in state court proceedings when a "lack of diligence . . . attributable to the prisoner or the prisoner's counsel" was responsible for the claim not having been developed in the state courts.  Williams v. Taylor, 529 U.S. 420, 432 (2000).  "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law."  Id. at 437.  Because Mr. Jones, through his extreme untimeliness, did not "seek an evidentiary hearing in state court in the manner prescribed by state law," and thus did not exhibit the "minimum" level of diligence required to develop a factual record on his claim, id., this Court found itself precluded from holding an evidentiary hearing on that claim, because neither exception to this rule provided in Section 2254(e)(2)(A) applied.  Memorandum Opinion, Jones v. Holt (Sept. 30, 2011), at 5.

## 2.  Procedural Default or Merits Determination?

Seeking reconsideration of this Court's decision, Mr. Jones contends that he did not procedurally default on his claim before the D.C. Court of Appeals, and that the order of that court denying his motion to recall the mandate was a decision on the merits.  Mot. Recons. at

1-2.  Mr. Jones points out that when he filed his motion to recall the mandate he included with it

a "Motion for Enlargement of Time to File Motion to Recall Mandate."  Id.; see Mem. Att. H at

6-10.  He also notes that the rules of the court of appeals provide: "For good cause, the court may

extend the time prescribed by these rules to perform any act, or may permit an act to be done

after that time expires."  D.C. App. R. 26.  Mr. Jones asserts that the court of appeals "did not

deny the petitioner's motion for an enlargement of time to file his motion to recall the mandate.

In fact, the Court of Appeals went directly to the merits of the motion and simply denied it,

without expressing an opinion."  Mot. Recons. at 2.

It is true that the court of appeals did not deny Mr. Jones' motion for an

enlargement of time to file, but neither did the court grant the motion, docket it, or acknowledge

it in any way.  See Mem. Att. I at 8.  Furthermore, the court of appeals has specifically rejected

the claim that "any denial of a motion to recall the mandate is on the merits," and has made clear

that it employs one-sentence, unexplained orders — like that with which it denied Mr.  Jones'

motion — for both procedure-based and merits-based denials.  Hardy v. United States, 988 A.2d

950, 961 (D.C. 2010).  The record does not definitively reveal, therefore, whether the court of

appeals denied Mr. Jones' motion based on a procedural bar or on the merits, a question with

implications not only for the present inquiry but also for whether this Court may even entertain

Mr. Jones' claims on habeas review.

When a state court declines to address a prisoner's federal claims because the

prisoner had failed to meet a state procedural requirement, that judgment rests on independent

and adequate state grounds, and federal habeas review of the prisoner's claim ordinarily is

precluded.  Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); see also Cone v. Bell, 556 U.S.

449, 465 (2009).  On the other hand, a federal court presented with a habeas petition from a state

prisoner whose claim has been denied in the state courts should "presume that there is no

independent and adequate state ground for a state court decision when the decision 'fairly

appears to rest primarily on federal law, or to be interwoven with the federal law, and when the

adequacy and independence of any possible state law ground is not clear from the face of the

opinion.'"  Coleman v. Thompson, 501 U.S. at 734-35 (quoting Michigan v. Long, 463 U.S.

1032, 1040-41 (1983)).  A state court judgment "fairly appears" to rest primarily on federal law

or is interwoven with federal law "in those cases where a federal court has good reason to

question whether there is an independent and adequate state ground for the decision."  Id. at 739.

A federal court considering a habeas petition should presume that the decision constituted a

merits determination unless the state is "explicit in its reliance on a procedural default."  Harris v.

Reed, 489 U.S. 255, 264 (1989); see id. at 263 (procedural default bars federal review only if

state court "clearly and expressly" states that its judgment rests on state procedural bar); see also

Jimenez v. Walker, 458 F.3d 130, 137 (2d Cir. 2006) (explaining that for the presumption of a

merits determination based on federal law to apply, "a federal habeas court must have 'good

reason' to doubt that the decision rests on an independent and adequate state ground") (citing

Coleman v. Thompson, 501 U.S. at 739).

        Here, notwithstanding the 180-day deadline for motions to recall the mandate set

forth in D.C. Court of Appeals Rule 41(f), this Court has "good reason" to question whether Mr.

Jones' motion was denied on the basis of that procedural rule.  First, the 180-day deadline is not

jurisdictional but, like other rules of the court, may be excused for good cause, D.C. APP. R.

26(b), which Mr. Jones attempted to demonstrate.  See Mem. Att. H at 6-10.  Second, the court

of appeals has suggested that it grants leniency to *pro se* movants with respect to this deadline.
See Head v. United States, 626 A.2d 1382, 1384 n.3 (D.C. 1993) (citing Pettaway v. United
States, 390 A.2d 981, 984 (D.C. 1978)).  Third, the court of appeals' method for addressing
motions to recall the mandate includes an initial step in which motions deemed lacking in merit
are denied without further review, which suggests that the prompt and summary denial of Mr.
Jones' motion does not necessarily indicate procedural default.[5]  Together, these considerations
suggest that the court of appeals, as likely as not, overlooked the untimeliness of Mr. Jones'
motion and simply determined that his claims lacked merit.  At a minimum, this Court has "good
reason" to question whether the alternative was the case.  Cf. Coleman v. Thompson, 501 U.S. at
740 (holding that where state procedural rule was "mandatory" and "unwaivable," and where
government filed motion to dismiss habeas petition based solely on noncompliance with this
procedural rule, which state court granted without explanation, decision appeared to rest
primarily on state law); Jimenez v. Walker, 458 F.3d at 138-39 (describing examination of the
"state court's practice when faced with such a [procedural] bar" as part of the inquiry into
whether a particular decision was procedural or merits-based).

     The court of appeals provided no indication that it denied Mr. Jones' motion
based on Rule 41(f); only the mere existence of that rule creates such an inference.  The Harris

---

[5]     Upon submission of a motion to recall the mandate, "a motions division must
decide whether or not to grant the motion on the basis that the claim initially has been found by
the court to have sufficient merit."  Hardy v. United States, 988 A.2d at 961 (quoting Head v.
United States, 626 A.2d at 1382).  Only if the movant satisfies this "heavy initial burden," which
requires "set[ting] forth in detail a persuasive case for recall of the mandate," Watson v. United
States, 536 A.2d at 1060, will the court recall the mandate and proceed to determine whether the
appellant was denied the effective assistance of appellate counsel.  Hardy v. United States, 988
A.2d at 961.

and Coleman presumption is not overcome, therefore, and this Court concludes that the court of appeals likely denied Mr. Jones' motion to recall the mandate — and its federal claims — on the merits.

Since this Court determines that Mr. Jones' motion to recall the mandate was not dismissed on procedural grounds, it cannot conclude that Mr. Jones "failed to develop the factual basis" of his claims within the meaning of 28 U.S.C. § 2254(e)(2), because the absence of a state court record is not due to a lack of diligence on Mr. Jones' part.  See Williams v. Taylor, 529 U.S. at 430-34, 437.  Section 2254(e)(2) therefore does not bar Mr. Jones from obtaining an evidentiary hearing.

3.  Evidentiary Hearing

Unfortunately for Mr. Jones, however, his request for an evidentiary hearing nevertheless is barred by a different provision of the habeas statute, 28 U.S.C. § 2254(d).  That section imposes sharp limits on a federal court's power to grant habeas relief "with respect to any claim that was adjudicated on the merits in State court proceedings."  Because Mr. Jones' motion to recall the mandate — which advanced the same ineffective assistance claims upon which his habeas petition is based — was denied by the court of appeals "on the merits," *see supra* at 7-9, federal review of the court of appeals' decision "is limited to the record that was before the state court that adjudicated the claim on the merits."  Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  As the Supreme Court has explained, the "backward-looking" language of Section 2254(d) "requires an examination of the state-court decision at the time it was made.  It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record

before the state court." Id.   This Court's habeas review therefore is limited to the materials

available to the court of appeals at the time it denied Mr. Jones' motion to recall the mandate,

and, the Supreme Court has determined, this Court may not conduct an evidentiary hearing to

expand the record.  Id. at 1401.[6]

It may seem unfair to Mr. Jones that he is denied an evidentiary hearing both if the

court of appeals dismissed his motion on procedural grounds and if the court denied it on the

merits.  That result, however, is a function of Congress' efforts to curtail federal habeas review of

state court decisions, in part through a statutory scheme "designed to strongly discourage" the

presentation of new evidence in federal court.  Cullen v. Pinholster, 131 S. Ct. at 1401.  This

statutory scheme does permit evidentiary hearings in some limited circumstances — just not

those in Mr. Jones' case.  For example, if the court of appeals had dismissed Mr. Jones' motion

to recall the mandate on procedural grounds for failure to comply with the 180-day deadline, but

if he later became aware of "a factual predicate that could not have been previously discovered

through the exercise of due diligence" or "a new rule of constitutional law, made retroactive to

cases on collateral review," 28 U.S.C. §§ 2254(e)(2)(A)(i), (ii), then neither Section 2254(d) nor

Section 2254(e)(2) would prevent this Court from conducting an evidentiary hearing.  See Cullen

v. Pinholster, 131 S. Ct. at 1401.  Or if, based on the existing record, this Court concluded that

the denial of Mr. Jones' motion to recall the mandate was "contrary to, or involved an

unreasonable application of, clearly established federal law," 28 U.S.C. § 2254(d)(1), then this

Court could conduct an evidentiary hearing to expand the record before granting relief.  See id. at

---

[6]        This limiting rule applies even where, as here, the state court summarily denied
the prisoner's claims.  Cullen v. Pinholster, 131 S. Ct. at 1402 (citing Harrington v. Richter, 131
S. Ct. 770, 786 (2011)).

1412 (Breyer, J., concurring in part and dissenting in part).  The combined effect of Sections

2254(d) and (e)(2) is that prisoners must diligently present their claims in the state courts and,

when seeking federal court review of an adverse determination by those courts, they may rely

only on the record that was presented to the state.

For the foregoing reasons, the Court will deny Mr. Jones' motion to reconsider the denial

of his request for an evidentiary hearing.

## B.  Motion to Dismiss

### 1.  Legal Standard

The respondent has filed a motion to dismiss Mr. Jones' petition "for failure to

state a claim[.]"  Mot. at 1.  Although the motion and its accompanying memorandum fail to cite

any applicable rules or legal standards governing motions to dismiss, the motion clearly rests on

Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the stated basis for the motion — that

Mr. Jones' claims are "vague and conclusory," Mem. at 13 — invokes the familiar standards

established in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556

U.S. 662 (2009), for evaluating the factual adequacy of a complaint.

Rule 12(b)(6) allows dismissal of a complaint if a plaintiff fails "to state a claim

upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "Federal Rule of Civil Procedure

8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled

to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon

which it rests[.]'"  Bell Atlantic Corp. v. Twombly, 550 U.S. at 555 (quoting Conley v. Gibson,

355 U.S. 41, 47 (1957)).  Although "detailed factual allegations" are not necessary to withstand a

Rule 12(b)(6) motion to dismiss, id., the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quotations omitted).  The Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.  The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions.  See id.; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  Although the Court will "read a *pro se* plaintiff's complaint liberally," the *pro se* complaint nevertheless must present a claim on which the Court can grant relief.  Chandler v. Roche, 215 F. Supp. 2d 166, 168 (D.D.C. 2002) (citing Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981)).

In deciding a motion to dismiss under Rule 12(b)(6), the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the [C]ourt may take judicial notice." Cole v. Boeing Co., 845 F. Supp. 2d 277, 283 (D.D.C. 2012) (citing Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).  A court may take judicial notice of public records from other proceedings.  Covad Comms. Co. v. Bell Atlantic Corp., 407 F.3d 1220, 1222 (D.C. Cir. 2005).[7]

---

[7]      Respondent's memorandum freely cites transcripts from Mr. Jones' trial, e.g., Mem. at 5-7, 15, 17, sometimes to support key factual predicates about the crime, but furnishes the Court with none of these transcripts, stating only that they "will be provided to the Court upon request." Mem. at 2.  The Court will not rely on any of these transcript citations or unsupported factual assertions made by the respondent, but only on the publicly available record

2.   Federal Habeas Corpus Review of Ineffective Assistance Claims

Where a state court has rejected a prisoner's claim "on the merits," federal habeas corpus review of that claim is extremely limited.  28 U.S.C. § 2254(d).  The inquiry into whether a state court has denied a claim "on the merits" for purposes of Section 2254(d) is the same as the inquiry into whether a state court has denied a claim on substantive or procedural grounds under the "independent and adequate" doctrine of Harris v. Reed and Coleman v. Thompson. See Jimenez v. Walker, 458 F.3d at 145.  This Court has determined that the District of Columbia Court of Appeals denied Mr. Jones' motion to recall the mandate — and the federal claims advanced in that motion — on the merits rather than on state law procedural grounds.  See supra at 7-9.  That determination means that Mr. Jones may obtain federal review of his claims, see Cone v. Bell, 556 U.S. at 465, 467-69, but only within the restrictive confines of Section 2254(d).

Under Section 2254(d), habeas corpus relief may be granted only if the state court's adjudication of the prisoner's claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts[.]"  28 U.S.C. §§ 2254(d)(1), (2); see Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  Cullen v. Pinholster, 131 S. Ct. at 1391 (quoting Harrington v. Richter, 131 S. Ct. at 786, and Woodford v.

_____

of Mr. Jones' case as set forth in the decisions, orders, and docket sheets of the District of Columbia courts.

Visciotti, 537 U.S. 19, 24 (2002)).  The petitioner carries the burden of proof.  Id.  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous.  The state court's application of clearly established law must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citation omitted).

   The same is true even where the state court does not provide its reasons for denying the prisoner's claims, because "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning."  Harrington v. Richter, 131 S. Ct. at 784.  "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  Id.  The federal court "must determine what arguments or theories . . . could have supporte[d] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court."  Id. at 786.  To succeed in his habeas petition, therefore, Mr. Jones' daunting task is to show that there was "no reasonable basis" for the court of appeals to reject his claims by denying his motion to recall the mandate, and that "fairminded jurists" could not possibly agree that the court of appeals' decision is consistent with Supreme Court precedent.

   Mr. Jones' task is made even more daunting by the fact that his claims are for ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).  In order to prevail on such claims, "a defendant must show two things: (1) 'that counsel's performance was deficient,' and (2) 'that the deficient performance prejudiced the defense.'"  United States v. Shabban, 612 F.3d 693, 697 (D.C. Cir. 2010) (quoting Strickland v. Washington,

466 U.S. at 687).  "Deficient" means that "counsel's representation fell below an objective standard of reasonableness," and "prejudice" means that "there is a reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different."  United States v. Rodriguez, 676 F.3d 183, 189 (D.C. Cir. 2012) (internal quotations omitted).  Success requires showing that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  United States v. Moore, 394 F.3d 925, 931 (D.C. Cir. 2005) (quoting Strickland v. Washington, 466 U.S. at 687).  "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  Knowles v. Mirzayance, 556 U.S. at 124 (quoting Strickland v. Washington, 466 U.S. at 689).  "It is up to the defendant to overcome this presumption and show that the challenged action was not the result of sound strategy."  United States v. Agramonte, 366 F. Supp. 2d 83, 86 (D.D.C. 2005) (citing Strickland v. Washington, 466 U.S. at 689-90).

A "doubly deferential" standard of judicial review applies "to a Strickland claim evaluated under the § 2254(d)(1) standard."  Knowles v. Mirzayance, 556 U.S. at 123; see Cullen v. Pinholster, 131 S. Ct. at 1410 (emphasizing this "important 'doubly deferential' standard").

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)).

Mr. Jones' task is more difficult still — with this Court's standard of review approaching triple deference — because he brings claims of ineffective assistance of *appellate* counsel, premised on that counsel's failure to pursue claims of ineffective assistance of trial counsel. "The analysis by which courts determine whether appellate counsel provided ineffective assistance is the same as that for trial counsel." United States v. Agramonte, 366 F. Supp. 2d at 86 (citing Smith v. Robbins, 528 U.S. 259, 289 (2000)). Appellate counsel "need not (and should not) raise every nonfrivolous claim," but rather "may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. 259, 288 (2000) (citing Jones v. Barnes, 463 U.S. 745 (1983)). To prevail, Mr. Jones must show that enough information was available to appellate counsel suggesting trial counsel's prejudicial deficiency (under Strickland's highly deferential standards) that appellate counsel's failure to pursue an ineffectiveness claim was itself prejudicially deficient (again under Strickland's deferential standards), and that the D.C. Court of Appeals' determination to the contrary was not merely wrong but "objectively unreasonable." Lockyer v. Andrade, 538 U.S. at 75. Rare indeed will be the claim that can surmount such hurdles. Mr. Jones' claims, by contrast, do not survive a motion to dismiss even without reference to the extra layer of deference required on federal habeas review.

### 3.  Jones' Ineffective Assistance of Counsel Claims

#### a.  Factual Background

The District of Columbia Court of Appeals has summarized the events surrounding Mr. Jones' conviction as follows:

The trial evidence leading to appellant's conviction arose out of events occurring in the early morning hours of November 14, 1999 in an apartment building at 329 Rhode Island Avenue, N.E., in the District of Columbia. A number of people, including Andrew Everette, George Jones, Kevin Jeffcoat, and Julian Ogburn, were in the lobby of the building when appellant and Kelly Winstead entered. Carrie Carter, who was standing outside of the building, noticed that appellant was carrying what appeared to be a black gun. When he entered the lobby, appellant brandished a gun, repeatedly cocking it. Appellant asked Vernon Dammons, who entered the building after appellant, whether his gun was "pretty." Although Dammons agreed that it was, appellant placed the gun against Dammons' head, at which point Winstead stepped between Dammons and appellant, urging appellant to "cool it."  George Jones then told appellant to "chill," and appellant shot him. Appellant then shot Kevin Jeffcoat. Both victims died as a result of their gunshot wounds.  Immediately after the shootings, Carter saw appellant and Winstead exit the building and observed appellant stuff a gun into his waistband. Angel Adams also saw appellant and another man exit the building after the shootings. The two men entered a car and drove away.

Mem. Att. G at 2.

### b.  Intoxication Defense

Mr. Jones contends that his appellate counsel rendered ineffective assistance by failing to pursue a claim that his trial counsel was ineffective for not advancing an intoxication defense.  He has not alleged any facts, however, that suggest ineffectiveness on the part of his trial counsel, much less that appellate counsel's failure to pursue such a claim was itself ineffective.  The only supporting fact alleged in Mr. Jones' petition to support trial counsel's alleged ineffectiveness is that "there was evidence in the record that the petitioner and the victims had been smoking PCP prior to the shooting."  Pet. at 5A.  Mr. Jones provides no details of any kind about this purported evidence — the source and content of which are a complete mystery. Mr. Jones therefore does not allege facts supporting an inference that trial counsel was

17

ineffective for not pursuing an intoxication defense; still less does he allege facts that, if true, would mean that his appellate counsel was ineffective for not pursuing this line of attack on appeal.  A pleading that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not survive a motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. at 557).

        After the respondent highlighted this deficiency in its motion to dismiss, putting Mr. Jones on notice that the vagueness of his allegations might lead to the dismissal of his petition, see Mem. at 8, 13-15, Mr. Jones' response still failed to allege even a shred of concrete factual support for his bare allegation that evidence of some still-unspecified kind in the record indicated his PCP use before the shooting.  While Mr. Jones offers citations to the transcripts of his trial, purportedly supporting "the fact that the parties present at the crime scene had been smoking PCP," Resp. at 4, he merely reproduces verbatim transcript citations from the respondent's motion to dismiss, which were cited as instances where defense counsel at trial "attempted to impeach the credibility of government witnesses by using prior inconsistent statements and showing contemporaneous drug use."  Mem. at 7 n.6.  Reproducing these citations without elaboration fails to add the necessary factual specificity.

        Mr. Jones also attached an affidavit to his response in an attempt to bolster the factual underpinnings of his claim.  The information in this affidavit was not before the District of Columbia Court of Appeals when it denied Mr. Jones' claim, see Mem. Att. H, and such information should not be considered by this Court on habeas review of that denial.  See supra at 9-11.  Given Mr. Jones' *pro se* status, however, and the fact that the standard form Section 2254 habeas corpus petition that he completed directed him to "[s]ummarize *briefly*" the facts

supporting each ground for relief, Pet. at 4 (emphasis in original), the Court will regard the

content of this affidavit as encompassed within his original petition.  The affidavit still offers him

no relief, however.  In it, Mr. Jones attests that he "used the drug PCP during the early morning

hours" on the date of the shooting, that he "ha[s] no recollection of shooting" either victim, that

"[n]either [his] trial or appellate counsel asked [him] about [his] PCP use" on that date, and that

he "was never interviewed by [his] appellate counsel regarding the potential areas of ineffective

assistance of [trial] counsel that could have been explored during the pendency of the direct

appeal."  Resp. at 5.  Even taking these allegations into consideration, Mr. Jones has alleged no

facts suggesting that trial counsel was on notice of the potential viability of an intoxication

defense.  Other than the utterly conclusory assertion that evidence of some sort indicated that Mr.

Jones was smoking PCP, he has stated no facts supporting an inference that trial counsel had

good reason, or any reason, to consider an intoxication defense.  Mr. Jones does not claim that he

or anyone else ever told trial counsel about his alleged PCP use, nor does he explain any concrete

reason that trial counsel otherwise should have been aware of it.

      Even if there were some indications available to trial counsel that Mr. Jones had

used PCP before the shootings — and again, Mr. Jones has alleged no facts to support such a

conclusion — Mr. Jones has not alleged facts that could support a finding that trial counsel's

failure to pursue an intoxication defense constituted ineffective assistance, as opposed to "sound

trial strategy."  Strickland v. Washington, 466 U.S. at 689.  In the District of Columbia, evidence

of use of alcohol or drugs by itself is not enough to support an intoxication defense.  The

evidence required to obtain an intoxication defense instruction "must reveal such a degree of

complete drunkenness that a person is incapable of forming the necessary intent essential to the

commission of the crime charged." <u>Bell v. United States</u>, 950 A.2d 56, 65 (D.C. 2008). "There

must be evidence that the defendant 'has reached a point of incapacitating intoxication.'" <u>Id</u>.

(quoting <u>Smith v. United States</u>, 309 A.2d 58, 59 (D.C. 1973)). "Conclusory statements" about

the use of a controlled substance are insufficient: "Rather, there must be evidence of the type and

quantity of [the substance] consumed, the length of time during which it was consumed, and the

specific manner in which the consumption made the defendant incapable of acting with specific

intent." <u>Washington v. United States</u>, 689 A.2d 568, 574 (D.C. 1997).

 Presenting evidence about the type and quantity of PCP that Mr. Jones smoked,

the length of time during which it was consumed, and the effect it had upon him, likely would

have required testimony from Mr. Jones and/or Kelly Winstead, with whom Mr. Jones arrived at

the scene of the crime. <u>See id</u>.; Mem. Att. C at 3-6; Mem. Att. G at 2. The perils of putting a

criminal defendant on the stand are well known. As for Mr. Winstead, the Superior Court has

explained that he would have been "an unreliable witness who could have damaged defendant's

case," Mem. Att. C at 9, due to his multiple and self-contradictory accounts about his knowledge

of the shootings, his whereabouts at the time, and Mr. Jones' guilt, <u>id</u>. at 7-9, not to mention his

admission to a detective and later to a grand jury that even if Mr. Jones committed a crime in his

presence Mr. Winstead would not reveal it. <u>Id</u>. at 9.

 In light of these considerations, it would hardly be unreasonable as a matter of

strategy for counsel to forego pursuing an intoxication defense if it required potentially crippling

Mr. Jones' case by putting him or Mr. Winstead on the stand to recount their recollections of the

night of the shootings — especially given that such a defense, at most, could have reduced Mr.

Jones' conviction for first degree murder to second degree murder.[8]  And regardless of what

evidence may have supported an intoxication defense, the pursuit of such a defense would have

been inherently risky, because adopting such a strategy would implicitly concede that Mr. Jones

shot the two victims.

Courts "must indulge a strong presumption that counsel's conduct falls within the

wide range of reasonable professional assistance; that is, the defendant must overcome the

presumption that, under the circumstances, the challenged action might be considered sound trial

strategy."  Strickland v. Washington, 466 U.S. at 689 (internal quotation omitted).  Even if all of

Mr. Jones' allegations are true, they would not overcome this presumption.  Mr. Jones cannot

possibly hope, therefore, to rebut the presumption that *appellate* counsel's decision not to pursue

an ineffectiveness claim was the result of sound strategy.  His pleading therefore fails to state a

claim on which relief can be granted.  This result obtains whether or not the Court takes into

account the heightened showing that Mr. Jones ultimately must make to prevail in his petition

under the federal habeas statutes.[9]

---

[8]    See Wheeler v. United States, 832 A.2d 1271, 1273 (D.C. 2003) ("[V]oluntary
intoxication 'may negative the ability of the defendant to form the specific intent to kill, or the
deliberation and premeditation necessary to constitute first degree murder, in which event there is
a reduction to second degree murder,'" but "it 'may not reduce murder to voluntary
manslaughter, nor permit an acquittal of murder.'") (quoting Bishop v. United States, 107 F.2d
297, 302 (1939)); accord Washington v. United States, 689 A.2d at 573.

[9]    In support of his habeas petition, Mr. Jones also has submitted an affidavit from
Mr. Winstead.  See Docket No. 10.  The Court cannot consider this affidavit on habeas review, as
it was not before the District of Columbia Court of Appeals, see supra at 9-11, but the facts
alleged therein would not help Mr. Jones in any event.  Mr. Winstead attests that he smoked PCP
with Mr. Jones into the morning hours on the day of the shootings, that he later was interviewed
by Mr. Jones' counsel, that counsel never asked him "about PCP use," and that "[a]ll [he] was
asked is what did [he] know about the case Mr. Jones was locked up for."  Id. at 1.  Mr. Winstead
continues: "I say again as I did before I never saw Mr. Jones do anything that had anything to do

c.  Merger of Firearm Charges

Along with first and second degree murder, Mr. Jones was convicted of two

counts of possession of a firearm during a crime of violence ("PFCV").  The second ground for

relief in his habeas corpus petition is that his appellate counsel should have brought claims that

his trial counsel was ineffective "for failing to argue that only one possession of a firearm during

a crime of violence charge may result from shooting multiple victims during a single criminal

episode[.]"  Pet. at 5A; see id. at 5B.  In support, Mr. Jones cites Nixon v. United States, 730

A.2d 145 (D.C. 1999), in which the District of Columbia Court of Appeals held that the rule of

lenity, "under the circumstances presented in [that] case," required that multiple PFCV charges

be merged where the defendant "fir[ed] simultaneously at several victims" by shooting into a car

containing four people.  Id. at 153.

In Stevenson v. United States, 760 A.2d 1034 (D.C. 2000), however, the court of

appeals expounded on the meaning of Nixon and emphasized its limited reach.  The court first

reiterated the "general rule" that "where two predicate armed offenses do not merge, a defendant

may be convicted of separate counts of PFCV relating to each offense."  Id. at 1035.  It then

described the "limited exception to this approach" fashioned in Nixon, but explained why that

---

with guns."  Id.  These attestations do not offer facts that suggest trial counsel's ineffectiveness;
therefore they provide no factual basis for such a finding with respect to appellate counsel.  Mr.
Winstead states that trial counsel asked him what he knew about the shooting, and — like Mr.
Jones — he pointedly does not claim that he told trial counsel anything about Mr. Jones smoking
PCP or being intoxicated.  Instead, he merely states that counsel never asked him about PCP.
But neither his affidavit nor any of Mr. Jones' own allegations supply any reason for trial counsel
to have made such an inquiry.  Nor can Mr. Winstead's affidavit help Mr. Jones overcome the
presumption that both trial and appellate counsel's choices were the result of sound trial strategy.

"narrow holding," involving "a 'single violent act' with 'simultaneous' action . . . does not encompass the merger of PFCV charges arising out of . . . distinct acts, even when they involve the same firearm." Id. at 1036 (quoting Nixon v. United States, 730 A.2d at 153).  The court accordingly sustained two separate PFCV convictions predicated on burglary and robbery offenses committed by the defendant where some time passed between the two crimes.  Id. at 1037-38.  This holding represented an application of the "fresh impulse" or "fork in the road" test, "where a defendant has an opportunity to reconsider his action before proceeding onward." Id. at 1037.  Such scenarios, the court explained, are "quite distinct from the kind of simultaneous violent act involved in the Nixon holding."  Id. at 1038.

Here, all the evidence indicates that Mr. Jones' shooting of George Jones and Kevin Jeffcoat were distinct rather than simultaneous acts, and Mr. Jones alleges no facts to the contrary.  In other words, the undisputed evidence shows that Mr. Jones did not fire at both men simultaneously, as in Nixon, but rather that he aimed and fired at each man separately and sequentially.  The evidence presented at trial was that Mr. Jones shot George Jones after he told Mr. Jones to "chill," and that Mr. Jones "then" shot Mr. Jeffcoat.  Mem. Att. F at 2; Mem. Att. G at 2.  That these two shootings represented entirely distinct acts is confirmed by the fact that Mr. Jones was convicted of first degree murder for one of the shootings but only second degree murder for the other.  Mem. Att. F at 1.  Mr. Jones, therefore, was not "firing simultaneously at several victims," Nixon v. United States, 730 A.2d at 153, and Nixon's "narrow holding" does not apply to his case.  In the wake of Stevenson, which was decided well before Mr. Jones' trial, see Mem. Att. A at 7, it was reasonable for Mr. Jones' trial counsel to conclude that any merger argument would be fruitless and that efforts were better devoted to other tactics.  Mr. Jones'

allegations provide nothing to overcome the "strong presumption" that counsel's action constituted "sound trial strategy."  Strickland v. Washington, 466 U.S. at 689.

Because there is absolutely no basis upon which to believe that Mr. Jones' trial counsel was ineffective by not pursuing a merger argument, the facts alleged by Mr. Jones do not support a finding that his appellate counsel was deficient for failing to pursue an ineffectiveness claim arising from that omission.  Furthermore, in view of the discussion in Stevenson and the facts presented at Mr. Jones' trial — which show that a merger argument would almost certainly have failed — Mr. Jones cannot possibly demonstrate a "reasonable probability that, but for counsel's [alleged] errors, the result of the proceeding would have been different" on appeal. Strickland v. Washington, 466 U.S. at 694.  He therefore fails both prongs of Strickland's test for ineffective assistance.  Once again, this determination can be made even without considering the deference owed to the District of Columbia Court of Appeals on federal habeas review.

III.  CONCLUSION

For the foregoing reasons, the Court will deny Mr. Jones' motion to reconsider and will grant the respondent's motion to dismiss.  An Order consistent with this Opinion will be issued this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN

DATE:   September 28, 2012                    United States District Judge